UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

ACE HOLDING, LLC,   Case No. 20-11390
                    Chapter 11

Debtor.

APPEARANCES:

Peter Alan Orville, Esq.
Orville & McDonald Law, PC
Attorney for Ace Holding, LLC
30 Riverside Drive
Binghamton, NY 13905

Justin A. Heller, Esq.
Nolan Heller Kauffman, LLP
Attorney for Creditor
80 State Street, 11th Floor
Albany, New York 12207

Mark J. Schlant, Esq.
Subchapter V Trustee
1600 Maine Place Tower
350 Main Street
Buffalo, NY 14202

Andrea Wilkinson
Member of Ace Holding, LLC
960 Sterling Ridge Drive
Rensselaer, New York 12144

Hon. Robert E. Littlefield, Jr.

## MEMORANDUM, DECISION & ORDER

The Court has been asked to review the terms of an addendum to the confirmation order ("Schedule A") to determine if Ace Holding, LLC's ("Ace" or "Debtor") breach of Schedule A's terms is material. This determination requires the court to interpret when a payment is deemed "received" under Schedule A. Next, the Court will decide whether the Homeowners

1

Association's ("HOA" or "Creditor") attorney's fees are reasonable and to what extent, if any, they should be paid by the Debtor. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(J) and 1334(b).[1]

## BACKGROUND/FACTS

Ace filed this Chapter 11, subchapter V case on November 1, 2020. (ECF No. 1). Issues immediately arose between the Debtor and the HOA surrounding the Creditor's claim. After numerous hearings, the matter was assigned to mediation which was unsuccessful. (ECF Nos. 63-66 & 78).

On March 16, 2022, the HOA filed a "Motion For Relief From The Automatic Stay, Or, In The Alternative, Dismissal." (ECF No. 145). On March 30, 2022, the Debtor's owner, Andrea M. Wilkinson ("Wilkinson"), objected. (ECF No. 148). On the same day, Peter Orville, Esq., noted his appearance as attorney for Ace.[2] (ECF No. 150).

The HOA's motion for relief from stay was adjourned in contemplation of the sale of certain real property. On April 27, 2022, the Debtor's attorney made an oral motion to sell property located at 174 South Pearl Street, Albany, New York. (ECF No. 156, Hrg. at 18:57). All parties in interest consented to the sale and an order approving same was signed on May 4, 2022. (ECF No. 157). Pursuant to the sale order, the real property taxes, legal fees and miscellaneous costs would be paid at closing with the remaining proceeds paid to the HOA. *Id.*

The Creditor's initial motion for relief included a request to dismiss the case, thus, the parties focused on that portion of the motion. (ECF No. 145). On June 23, 2022, the HOA filed a

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2023).

[2] On January 10, 2022, the Debtor's original attorney moved to withdraw from the case and an order granting the request was entered on February 18, 2022. (ECF Nos. 108 & 139).

second motion for relief from the automatic stay based upon the Debtor failing to tender adequate protection payments.[3] (ECF No. 168). In response, Debtor's counsel indicates, "Andrea Wilkenson [sic], . . . was out of town for an extended period dealing with family issues and some medical issues of her own until approximately the second week of June." (ECF No. 174 at ¶ 5). The Debtor represents that since that time Wilkinson attended to several repairs and other details which resulted in the sale of a unit. *Id.* Debtor's counsel continues, "The June and July adequate protection payments of $895.83 each, totaling $1,791.66 [are] being delivered to the [HOA's counsel] today, July 5, 2022." *Id.* at ¶ 6.

On August 17, 2022, the Debtor filed a fourth amended plan. (ECF No. 188). On August 18, 2022, counsel for the HOA indicated the parties agreed to terms and treatment of the HOA's claim. (ECF No. 195 at ¶ 1). On October 12, 2022, the Court signed a consensual order confirming the fourth amended plan ("Confirmation Order").[4] (ECF No. 204). The first payment due was on November 1, 2022. *Id.*

On October 24, 2022, counsel for the HOA sent an email to Debtor's counsel and the Trustee noting the first two payment amounts due on November 1 and November 15, 2022. (ECF No. 217, Ex. B). Counsel for the HOA urged Debtor's counsel and the Trustee, "Please share these instructions with the debtor. And please emphasize that payments may not be made through my office and must be made on time." *Id.* Nevertheless, the Debtor did not make the first payment due on November 1, 2022.

---

[3] The Debtor's response indicates this default was cured. (ECF No. 174).

[4] Schedule A is incorporated into the Confirmation Order and directs how the HOA's allowed claim will be paid. (ECF No. 204 at ¶ F). Schedule A also addresses ongoing monthly charges and the remedies in the event of a default. *Id.*, Ex. A.

On November 3, 2022, the HOA issued the first Notice of Default ("NOD") affording Ace until November 15, 2022, to rectify the failure to tender timely payment. (ECF No. 211 at 15-17, Ex. C). The NOD indicates the amount in default and specifically states, "[T]he foregoing payment must be paid electronically to the HOA as expressly required under ¶ 2 of Schedule A." *Id*.

In response to this notice, Wilkinson sent an email to Ace's attorney, the Trustee and carbon copied the HOA's counsel. (ECF No. 211, Ex. D). The email states, "I was not advised[5] by my attorney or the trustee to make the payment of $12,000,[6] until after your first letter. And like any other member of the HOA, I have until the 5th of each month to pay the dues." *Id.*

After November 10, 2022, but before November 15, 2022, Wilkinson tendered the overdue payment via written check to the HOA. On November 15, 2022, counsel for the HOA sent an email to counsel for Ace stating in part, "[T]he Debtor apparently brought the attached checks to the HOA's PO Box . . . . The payments are deficient and being returned by the HOA to the Debtor." *Id.*, Ex. E. The HOA's email continues, "The Plan is very clear that (a) payments must be made electronically and (b) any cure payment must include the required late fee[7] in order to cure a default." *Id*. The Debtor did not cure the default as the payment was not made

---

[5] Wilkinson's statement that she was not aware of the payment requirements is surprising as she signed Schedule A and therefore, should have been familiar with its contents. (ECF No. 204, Ex. A).

[6] The Debtor was to fund $12,379.58 which constituted the balance of the proceeds from the sale of 174 South Pearl Street to meet the agreed upon $121,649.59, which is the amount that was owed on the HOA's judgment as of the petition date. (ECF No. 174 at ¶ 8).

[7] Schedule A provides in relevant part:

> Upon the first event of Default, the Debtor shall be obligated to pay the HOA a late fee in the amount of $200.00. The late fee shall increase by $100.00 with each successive Default. For example, if the Debtor defaults three times, the late fee will be $400. The amount required to be paid by the Debtor to cure a Default shall include payment of the late fees incurred in connection with the Default. For the avoidance of doubt, a cure payment that does not include the required late fees will not cure the Default.

(ECF No. 204, Ex. A).

electronically and failed to include the required late fees. On November 21, 2022, the HOA returned the checks to the Debtor and elected to demand payment in full. (ECF No. 211 at ¶¶ 20-21, Ex. E).

On November 28, 2022, the Subchapter V Trustee ("Trustee") filed a motion[8] indicating the Debtor attempted to make the November 2022 payment but it was rejected. (ECF No. 206 at ¶ 2). The Trustee requested this Court compel the HOA to accept the payments. *Id.* at ¶ 7. Ace's attorney intervened and requested the motion be heard on an expedited basis. (ECF No. 209). On November 29, 2022, the HOA responded to the Trustee's motion. (ECF No. 211).

On December 21, 2022, the HOA filed a third motion for relief from the automatic stay. (ECF No. 217). The Debtor opposed the motion and the HOA responded. (ECF Nos. 221 & 224). On February 2, 2023, a hearing was held and the Court took under advisement the following questions: (i) whether the Debtor's default in payments is material, including what is necessary pursuant to Schedule A for a payment to be "received" (i.e., must the funds be in the Creditor's bank account or is it sufficient for the Debtor to schedule an electronic payment by the due date?) and (ii) if a material default exists, the appropriate amount of the HOA's attorney's fees, if any, to be paid by Ace. (ECF Nos. 232, Hrg. at 43:01 & 234, Hrg. at 2:30). Additional submissions were permitted and the matter was fully before the Court on February 9, 2023. (ECF Nos. 233, 235, 236 & 238).

## ARGUMENTS

The HOA argues the terms of the Confirmation Order and Schedule A are clear, yet the Debtor failed to remit timely payments not once but several times. (ECF No. 211 at ¶¶ 3-4, 16-17). The Creditor points out this is not the Debtor's first Chapter 11 filing and therefore, Ace

---

[8] It is uncertain why the motion to compel acceptance of payment and to deem Debtor current was initiated by the Trustee rather than the attorney for Ace. (ECF No. 206).

5

should have been familiar with the requirements for a successful Chapter 11. *Id.* at ¶ 5. The HOA asserts the terms of Schedule A were vigorously negotiated rendering the Debtor's default in the first month ominous and demonstrating the inability to complete this Chapter 11 proceeding. *Id.* at ¶ 3-4. However, the HOA indicates it would be willing to enter into a conditional order provided it includes prompt payment of $9,243.75[9] in attorney's fees plus $188.00 in expense reimbursement as consideration for the agreed order. (ECF No. 233 at ¶¶ 4-5).

The Debtor argues it was unable[10] to make the payment electronically and a written check was sent to ensure payment would be received within the cure period. (ECF No. 221 at ¶ 5). Wilkinson indicates she did not know that the November payments were rejected by the HOA until after the HOA issued a letter on November 21, 2022, declaring default. (ECF No. 206 at ¶ 3). Ace's attorney contends the HOA's request for $9,243.75 in attorney fees for a default is excessive and the HOA is relying on technical and formalistic reasons to call the default. (ECF No. 236 at ¶¶ 2-6). Finally, the Debtor represents it has previously submitted substantial payments to the HOA, including a July 2022 payment of $109,513.88 from the proceeds of the sale of real property. *Id.* at ¶ 7. According to the Debtor, to allow the Creditor to call the entire amount due based upon the outlined defaults is fundamentally unfair to the Ace. (ECF No. 221 at ¶¶ 6-11).

**DISCUSSION**

It is settled, "[t]he Bankruptcy Code empowers bankruptcy courts to take measures that grant relief from the automatic stay, including 'terminating, annulling, modifying, or conditioning' the stay, under certain circumstances." *E. Refractories Co. v. Forty Eight*

---

[9] The HOA's counsel has provided itemized billing records for this amount. (ECF No. 233, Ex. A).

[10] It is unclear why Ace was unable to make the payment electronically. Apparently, this issue has been rectified.

*Insulations*, 157 F.3d 169, 172 (2d. Cir. 1998) (quoting 11 U.S.C. § 362(d)). Moreover, upon a showing of cause "bankruptcy courts have the plastic powers to modify or condition an automatic stay . . . so as to fashion the appropriate scope of relief." *Id*. While "cause" is not defined in § 362, "[c]ourts in this circuit have ruled that a debtor's failure to make mortgage payments can constitute *sufficient cause* to modify an automatic stay . . . ." *Boissard v. Specialized Loan Servicing, LLC*, No. 19-CV-4280, 2020 U.S. Dist. LEXIS 255490, at *9 (E.D.N.Y. Nov. 24, 2020) (citations omitted) (emphasis added). The Court sees no reason for ongoing homeowner's association dues to be treated differently from ongoing mortgage payments.[11] Therefore, Ace's failure to make timely post-petition payments is cause for relief from the automatic stay.

### I.    IS THE DEFAULT MATERIAL?

Bankruptcy Courts are afforded considerable discretion in determining whether to lift the automatic stay as "[t]he term 'for cause' [is] 'a broad and flexible concept that must be determined on a case-by-case basis.'" *Boissard*, 2020 U.S. Dist. LEXIS 255490, at *10 (quoting *Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 508 (E.D.N.Y. 2018) (citation omitted)). The Court will examine Schedule A, determine the meaning of the term "received" and then decide whether the default on payments is material.

### A.    SCHEDULE A TO THE CONFIRMATION ORDER.

Schedule A is the result of significant efforts of the parties and their respective counsel. (ECF No. 204, Ex. A). After extensive negotiations, the parties[12] agreed in pertinent part: "The

---

[11] Courts have held condominium dues, which may be more analogous to the HOA's dues, are akin to mortgage payments finding "debtors cannot 'continue to own their condominium unit and have the benefit of the upkeep and maintenance on the property while refusing to pay for such benefits.'" *In re Gonzalo*, 169 B.R. 13, 16 (Bankr. E.D.N.Y. 1994) (quoting *In re Raymond*, 129 B.R. 354, 359 (Bankr. S.D.N.Y. 1991)).

[12] Schedule A was executed by: Andrea M. Wilkinson, as Member of Ace; Justin Heller, Esq., attorney for the HOA; Peter Orville, Esq., attorney for Ace; Gregory Rutnik, Esq., attorney for Albany County; and Mark Schlant, Esq., the Subchapter V Trustee. (ECF No. 204, Ex. A).

debtor shall make Plan payments on the HOA Allowed Claim[13] in the amount of $990.13 . . . on the 15th day of each month for 60 months, commencing the 15th day after the Effective Date . . . ." *Id*. at ¶ 1. Schedule A continues, "The due date for post-confirmation payment of HOA fees shall remain the 1st day of each month, pursuant to the HOA's governing documents." *Id*. Schedule A further indicates how payments should be tendered, stating in part:

> All Plan payments on the HOA Allowed Claim shall be made electronically and must be **received** by the HOA on or before the due date. The Debtor may elect to make payments through the platform currently used for payments of dues, or the Debtor can make arrangements with its bank for electronic transfers . . . .

*Id*. at ¶ 2 (emphasis in original).

Next, Schedule A addresses the notice requirements and the ramifications should Ace default. *Id.* at ¶ 3. These provisions state in relevant part, "The Plan will be in default if Debtor fails to make a Plan payment to the HOA when due . . ., provided that the Debtor shall be entitled to 15 days' written notice of an Event of Default and opportunity to cure . . . ." *Id*. Further, Schedule A states, "If the Debtor fails to cure any Default within 15 days after the HOA provides to the Debtor a Default Notice . . ., the remaining unpaid amount of the HOA Allowed Claim may be declared immediately due and payable by the HOA at its option." *Id*.

### B.  PAYMENT IS RECEIVED WHEN DEPOSITED INTO THE HOA'S BANK ACCOUNT.

The Court finds that funds are "received" only when they reach the Creditor's bank account. As previously discussed, Schedule A's requirements are clear in how and when payments are required to be made under the plan and the effect of a payment default.

Moreover, the HOA's "General Payment Information" specifically provides guidance addressing the timing requirements when making payments online. (ECF No. 241 at 4). It states, "**If you are paying online**, you must ensure that you schedule your payment so that it is

---

[13] Allowed Claim is a defined term in Schedule A and is referred to in this decision as such. *Id.*

deposited into the Association account no later than the 1st to avoid late fees. Please check with your bank to determine their schedule for releasing funds." *Id.* (emphasis in original). This requirement is clear and the Debtor has not given the Court any reason to deviate from the plain language in the documents to which Ace agreed.

The Debtor's counsel, the Trustee and Wilkinson downplay the defaults arguing they were miniscule and immediately cured. The Court disagrees. Based upon the prior defaulted payment agreements, unending state court litigation and multiple bankruptcy filings, the Debtor should have been ready, willing and able to commence both plan payments as well as maintain the ongoing monthly fees to this Creditor. Moreover, as previously noted, Schedule A's terms are the result of extensive negotiations and their attendant costs. Thus, any default based upon a late payment or a payment not made in the proper manner is material.

Having found a material default occurred, the Court must decide the appropriate amount of the HOA's attorney's fees to be payable by Ace.

## II.   THE CREDITOR'S ATTORNEY'S FEES.

In determining a presumptively reasonable fee, the Second Circuit utilizes a modified lodestar approach which includes in its analysis the twelve relevant factors ("*Johnson* factors") originally enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[14]

---

[14] The Second Circuit explains:

> We think the better course -- and the one most consistent with attorney's fees jurisprudence -- is for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay . . . .

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).

    A.    **THE REASONABLE HOURLY RATE.**

The Creditor's attorney indicates he and the HOA have agreed to $318.75 per hour. (ECF No. 233 at ¶ 2). This includes a 15% reduction of counsel's normal billing rate ($375.00) "in recognition of the fact that [the Creditor] is a small non-profit organization." *Id*.

The Court finds the hourly rate of $318.75 to be reasonable. First, the HOA's attorney has been practicing bankruptcy law, including Chapter 11 cases, for years and has vast experience in these types of proceedings. Moreover, $318.75 is well within the customary hourly rate routinely granted in this Court[15] and no opposition to the hourly rate requested by counsel has been raised.

    B.    **THE REASONABLE TIME SPENT.**

Having determined the Creditor's hourly rate is reasonable, the Court now considers whether the time requested is acceptable. The Creditor's counsel has submitted time records organized by the calendar month which request the following total billable hours: November 2022 – 10.8 hours ($3,442.50); December 2022 – 9.5 hours ($3,028.14); and January 2023 thru February 2, 2023 – 10.3 hours ($3,283.14). (ECF No. 233, Ex. A). The HOA's counsel's request for $188.00 in expense reimbursement related to a cost incurred on December 29, 2022, is granted. *Id.*

The Court notes, there are certain charges which are lumped.[16] It has been determined:

---

[15] The following are examples of hourly rates approved in this Court: *In re Interstate Commodities, Inc.*, No. 20-11139 (fees ranging from $250.00 to $750.00 per hour for attorney time); *In re Red Hook Solar Corp.*, No. 21-10759 ($325.00 per hour for attorney time); and *In re Creative Encounters, LLC*, No. 22-10533 ($325.00 per hour for attorney time).

[16] "Courts faced with lumped time entries have either (1) denied the compensation requested for such time entries . . . or (2) made a global adjustment for all of the lumped time entries reducing compensation for such entries by a certain percentage . . ., solely on the basis of lumping." *In re Poseidon Pools of Am.*, 180 B.R. 718, 750 (Bankr. E.D.N.Y. 1995) (internal citations omitted) (emphasis in original). Other courts have reduced the time entries to thirty minutes of allowed time. *See, e.g.*, *In re CCT Commc'ns, Inc.*, No. 07-10210, 2010 Bankr. LEXIS 2947, at *17 (Bankr. S.D.N.Y. Aug. 24, 2010) (allowing thirty minutes per lumped time entry and disallowing the balance).

> [The] practice of amassing multiple time entries into a single entry is "a practice universally disapproved by the bankruptcy courts for two reasons . . . [o]ne, it permits an applicant to claim compensation for rather minor tasks" and "[t]wo, it prevents the Court from determining whether the individual tasks were expeditiously performed within a reasonable period of time."

*In re Wilson*, No. 18-42302, 2022 Bankr. LEXIS 3, at *65 (Bankr. E.D.N.Y. Jan. 3, 2022) (citation omitted).

### 1. November 2022.

The November 3rd request for one hour for drafting the default letter is reduced to 0.5 hours as it is excessive.[17] The November 7th (0.4 hour), 15th (0.8 hour), and 20th (0.6 hour) requests are approved as reasonable. The November 22nd request (0.3 hour) pertaining to "attention status/strategy" is denied as the Court cannot determine if the time expended is in relation to the Debtor's current default. The November 28th request for 3.3 hours to review the motion filed by the Trustee is reduced to 1 hour as it is only two pages and would not take extensive review.[18] Finally, the November 29th (2.8 hours) and 30th (1.6 hours) requests are also reduced by half as they are excessive for the tasks listed as well as being lumped. Therefore, the Court will approve 1.4 hours for November 29th and 0.8 hour for November 30th. In sum, the fees attributable to the Debtor for November 2022 total 5.5 hours ($1,753.13).

### 2. December 2022.

The Court finds the 1.4 hours requested on December 1st as reasonable and approves the same. The December 6th request of 1.5 hours attributed to "prepare for and participate in court conference, telephone call with client and Chapter V Trustee regarding status" is lumped and a review of the Court's docket indicates the hearing on December 6, 2022, lasted approximately 30

---

[17] "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours . . . ." *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987, 2022 U.S. Dist. LEXIS 25036, at *34 (S.D.N.Y. Feb. 9, 2022) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

[18] Additionally, the substantiation for that request is lumped requesting payment for, "Review Motion to Vacate Default; telephone with client regarding same; draft opposition to same." (ECF No. 233, Ex. A).

minutes. (ECF No. 214). The Court will approve 0.75 hours to prepare for and attend that hearing. The Court also finds the December 9th (0.2 hour) and December 12th (0.3 hour) time requests reasonable and grants same. On December 14th the Creditor's attorney requests 1.2 hours for preparing and participating in a court conference and various telephone calls. This Court will approve 0.5 hours for preparing and attending the court conference which according to the docket lasted approximately 10 minutes. (ECF No. 216).

Next, a combined 4.1 hours is requested on December 20th and 21st for drafting the Motion for Relief from Stay filed on December 21, 2022. The counsel for Ace argues this requested amount of time is "patently absurd" as "4.1 hours to draft and finalize a simple motion stemming from one missed payment is unacceptable." (ECF No. 236 at ¶ 2). Had this been the Debtor's first bankruptcy proceeding and if Ace had not failed to make adequate protection payments prior to confirmation, the Court might agree. As previously noted, this is the third bankruptcy filing for Ace with the most recent two dealing primarily with the debt owed to the HOA. Additionally, when notified of the preconfirmation default, the lackadaisical response by the Debtor and its counsel is troubling. Based upon the extensive history between Ace and the HOA and a clear default which was begrudgingly rectified, the Court finds the 4.1 hours requested to be reasonable.

The Debtor will not be directed to pay the charges incurred on December 23, 2022, described as a call between the HOA and its counsel to discuss "strategy/status" as, once again, the Court cannot determine if this discussion was related to the Debtor's current default. Finally, the Court finds the 0.4 hours expended on December 28th to be reasonable. In sum, this Court finds the Debtor should pay 7.65 hours ($2,438.44) for these December 2022 requests.

### 3. January 2023 thru February 2, 2023.

The Court notes that the Creditor's counsel has agreed to exclude several time entries.[19] (ECF No. 233 at ¶ 4). The January 9th request (3.4 hours) for reviewing the opposition to the motion for relief as well preparing a response to said opposition is excessive for the task and reduced to 2 hours. The January 20th request of one hour is reasonable and granted. The January 23rd time request (1.4 hours) is excessive for the task and reduced to one hour. Finally, HOA's counsel requests 2.9 hours incurred on February 2, 2023. The Court reduces that amount to 1.5 hours for being excessive as the hearing lasted only 49 minutes and the entry is lumped with time spent preparing the fee application. Therefore, for January 2023 and the one February 2023 entry the Court finds the Debtor is responsible for a total of 5.5 hours ($1,753.13).

### CONCLUSION

For all these reasons, the Court finds the Debtor materially defaulted on the terms of the plan and Schedule A. Based upon this default, the Debtor is responsible for $5,944.70 of the HOA's attorney's fees plus $188.00 in cost reimbursement with the payments to be tendered as eight (8) equal monthly payments.[20] The first payment shall be due no later than August 15, 2023, and subsequent payments shall be due no later than the 15th of each consecutive month thereafter until the total sum is paid. Finally, all of these payments must be received in the HOA's bank account on or before the due date. Should the Debtor fail to make timely payment pursuant to this Memorandum, Decision & Order, the Creditor may file an *ex parte* affidavit of

---

[19] The January 17th (0.5 hour), January 31st (0.8 hour), and February 1st (0.3 hour) time requests were waived. (ECF No. 233 at ¶ 4).

[20] The first seven monthly payments shall be in the amount of $766.59 and the eighth month's payment shall be in the amount of $766.57. Payment of these attorney's fees are separate and distinct from the plan payments and the ongoing monthly charges.

non-compliance clearly delineating the amount of or reason for the default along with a proposed order lifting the automatic stay.

Dated: July 07, 2023
Albany, NY

/s/ Robert E. Littlefield, Jr.
Hon. Robert E. Littlefield, Jr.
United States Bankruptcy Court